UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| Munirah El Bomani, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 2:25-cv-13439-JKS-JRA |
| | : | |
| -against- | : | Return Date: 12/2/2025 |
| | : | |
| CITY OF NEWARK, CITY OF NEWARK MUNICPAL COUNCIL, FORMER CITY OF NEWARK MUNICIPAL COUNCIL PRESIDENT LAMONICA MCIVER, CITY OF NEWARK MUNICIPAL COUNCIL PRESIDENT C. LAWRENCE CRUMP, | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

## PLAINTIFF'S OPPOSITION TO DEFENDANTS FORMER CITY OF NEWARK MUNICPAL COUNCIL PRESIDENT LAMONICA MCIVER AND CITY OF NEWARK MUNICIPAL COUNCIL PRESIDENT LAWRENCE C. CRUMP'S MOTION TO DISMISS

Gregory A. Byrnes:

Anderson Law

104 W 27th Street, 11th Floor

New York, New York
Attorneys for Plaintiff Munirah El Bomani

i

# **TABLE OF CONTENTS**

Table of Contents ................................................................................. ii

TABLE OF AUTHORITIES ................................................................. iii

PRELIMINARY STATEMENT ............................................................4

PROCEDURAL HISTORY....................................................................6

STATEMENT OF FACTS .....................................................................6

ARGUMENT I. Defendants are Being Sued in Their Official Capacity, Therefore Service is Proper and Qualified Immunity Does Not Apply. ...................................18

ARGUMENT II. The Official Capacity Claims are Not Subject to Dismissal.......19

   1. Federal Rule of Civil Procedure 25(d) Expressly Precludes Dismissal of McIver.................................................................................19

   2. The Remaining Official Capacity Claims Must Proceed against Crump. .......21

ARGUMENT III. PLAINTIFF MUST BE AFFORDED THE OPPORTUNITY TO AMEND EVEN IF THE COURT IS INCLINED TO DISMISS CERTAIN COUNTS OF THE COMPLAINT .........................................................21

CONCLUSION .....................................................................................22

# TABLE OF AUTHORITIES

Cases

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)............................................15

*Beverly Enters., Inc. v. Trump*, 182 F.3d 183, 190 n.3 (3d Cir. 1999)...................17

*Coleman v. Kaye*, 87 F.3d 1491, 1500 (3d Cir. 1996)............................................18

*Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016)..................................16

El Bomani v. Baraka, CV 20-655 (KM) (ESK), 2021 WL 2349761 (D.N.J. June 9, 2021)............................................................................................................8

*Graham*, 473 U.S. at 167 .......................................................................................19

*Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir.2002)......................21

*Griswold v. Driscoll*, 625 F. Supp. 2d 49 (D. Mass. 2009) ....................................17

*Institutional Investors Grp. v. Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009)........17

*Kentucky v. Graham*, 473 U.S. 159, 165 (1985)............................................... 18, 20

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 [1978]..............................18

*Montville Twp. v. Woodmont Builders LLC*, 2007 WL 2261567 at 2 (3d Cir. 2007) ...................................................................................................................16

*Owen v. City of Independence*, 445 U.S. 622 (1980) .............................................19

*Phillips v. Cnty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008) ..................................21

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) ...............................16

*Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)....................15

*Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir.2000) ................................................21

*Twombly*, 550 U.S. at 555 ......................................................................................16

Statutes

FED. R. CIV. P. 25(d)................................................................................................21

FED. R. CIV. P. 8(a)(2) .............................................................................................16

Federal Rule of Civil Procedure 4(j)(2) ..................................................................19

New Jersey Court Rule 4:4–4(a)(8) .........................................................................19

## **PRELIMINARY STATEMENT**

Plaintiff Munirah El Bomani ("Plaintiff") respectfully submits this brief in opposition to the motion to dismiss filed by defendants Former Council President Lamonica McIver ("McIver") and City of Newark Municipal Council President C. Lawrence Crump ("Crump", Crump along with McIver collectively "Defendant Officials"). *See* ECF No. 9.

LaMonica McIver, C. Lawrence Crump, City of Newark Municipal Council ("Council") and City of Newark ("Newark") (McIver, Crump, Municipal Council and Newark collectively defined as "Defendants") have repeatedly violated Plaintiff's First Amendment rights by banning her from future Newark City Council meetings, unconstitutionally restricted her speech at meetings and subjected Plaintiff to facially unconstitutional codes of conduct at said meetings. In moving to dismiss the instant action, Defendants have argued that an official capacity suit must be personally served on an individual, that official capacity suits are subject to qualified immunity and that Plaintiff's detailed Complaint has somehow failed to allege "plausible" constitutional violations. All of these arguments are facially without merit as they are either wholly inapplicable or rely on the Court to disregard all applicable legal standards and precedent in order to rule in Defendants' favor.

4

First, Defendants were served in the manner required for serving individuals who have been named in their official capacity and Defendants concede this service in their own moving papers. Second, Qualified immunity is per se inapplicable to an official capacity suit. Third, Defendants have prohibited Plaintiff from exercising her rights of free speech while also acting completely outside the scope of their own Municipal Council Code of Conduct. Rule XVIII and XIX of the Newark Municipal Council's Code ("Rule XVIII" and "Rule XIX" respectively) are both challenged as being unconstitutional. Rule XVIII details the unconstitutionally vague, subjective and viewpoint based restrictions Defendants place on participants and XIX sets forth the similarly vague enforcement mechanism which further enables Defendants unconstitutional acts. Upon information and belief, Newark has already received a warning letter from the ACLU informing them that their viewpoint based bans through Rules XVIII and XIX were unconstitutional. Further, no language appears in this policy discussing or permitting the banning of a community member from future meetings. Such a prospective ban, without any assessment or belief that violent conduct or harm might ensure, is unconstitutional and Defendants cannot argue otherwise.

The restrictions on Plaintiff's speech at said meetings has caused Plaintiff to suffer irreparable harm because of Defendants' gross violation of Plaintiff's right to participate in the democratic process and be heard.

## PROCEDURAL HISTORY

Plaintiff filed her instant Complaint on July 17, 2025. (ECF Doc. 1).

Defendants concede that personal service was effected on the Municipal Defendants by personal service on the City Clerk's Office.

On September 9, 2025, Defendants filed an application for Clerk's order to extend time to file an answer or otherwise respond to the complaint. (ECF 5).

On October 10, 2025, Defendant, filed two Motions to Dismiss, made up of two briefs totaling over 61 pages as written, with City of Newark's brief totaling 49 pages when the statement of facts, procedural history and legal standard are "incorporated by reference." (ECF Doc. 8,9).

## STATEMENT OF FACTS

A full rendering of the facts can be found in Plaintiff's Complaint. See ECF Nos. 1, referenced herein as Exhibit 1. For the Court's convenience, the relevant facts are set forth below.

## 2020 Federal Court Litigation

Plaintiff, appearing pro se, initiated a prior federal action on January 17, 2020, against Ras J. Baraka, the City's Mayor; Amiri Baraka, Jr., the Chief of Staff; Eric Pennington, the Business Administrator; Luis Quintana, then-Council Vice

President; the Newark Police Department; the Newark Municipal Council; Police Officer Marcus Thomas; and Kenyatta Stewart, the Corporation Counsel. El Bomani v. Baraka ("El Bomani I"), No. CV 20-655 (KM) (ESK), 2020 WL 7768390, at *1 (D.N.J. Dec. 30, 2020).

El Bomani I was dismissed without prejudice as a result of failing to provide sufficient information to sustain her causes of action. Id. Plaintiff, still appearing pro se, attempted to amend her Complaint in accordance with the Court's order and opinion. *El Bomani v. Baraka*, CV 20-655 (KM) (ESK), 2021 WL 2349761 (D.N.J. June 9, 2021).

There, Plaintiff's Complaint stated that on September 19, 2019, Plaintiff was issued a letter banning her from speaking at that evenings City Council Meeting based on an incident that had occurred the previous day, wherein Councilman Luis Quintana called the police officer assigned to the council chambers to remove her while Ms. Bomani was asking Council why she was being prevented from speaking. Id. Plaintiff was grabbed, manhandled, had her jaw hit and was forcibly removed from the meeting. *Id*.

In dismissing the claims against Business Administrator Pennington ("Pennington"), the court specifically noted that the original complaint "did not explicitly identify a cause of action" and the complaint "alleged no facts at all" against Pennington, as he did not remove Plaintiff nor direct her removal. *Id*.

In dismissing the free speech claims, the court explicitly set forth that it had provided Plaintiff examples of the pleading requirements under *Graw v. Fantasky*, 68 F. App'x 378, 381 (3d Cir. 2003) at the previous appearance and that the amended complaint failed to allege that "(1) the speech was protected by the First Amendment and (2) the government excluded the plaintiff's speech in a public or non-public forum without justifying its actions to the standard required for the particular forum."

In dismissing the due process portion of her Complaint, the court went on to state that "[h]ere, Ms. El Bomani provides no more than a bald assertion that defendants violated her due process rights." *Id*.

Both of the previous Complaints were disposed of via a Motion to Dismiss for Failure to State a claim based a failure to plead sufficient facts on Complaints filed by a pro se litigant where there was no final judgment on the merits.

Plaintiff's Complaints in *El Bomani v. Baraka*, CV 20-655 (KM) (ESK), 2021 WL 2349761 (D.N.J. June 9, 2021) ("2021 Complaint") were dismissed due to insufficient facts being presented in both of Plaintiff's complaints under that matter number. None of the facts present in El Bomani I suit present in the current litigation.

However, the Court explicitly set forth in its footnote that "legislative immunity does not bar Section 1983 against municipal members in their official capacities" and that is "because Section 1983 claims against city council members

in their official capacities are "in all respects other than name, to be treated as a suit against the entity." *Bass v. Attardi*, 868 F.2d 45, 51 (3d Cir. 1989) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 [1985])."

At no point did the court state that the suits Councilman Quintana, the Newark Municipal Council, and Business Administrator Pennington were improper for reasons other than failure to state a claim by means of insufficient factual allegations.

## February 7, 2024 Removal and Subsequent Ban

On February 7, 2024, Plaintiff attended and spoke at the Newark City Council meeting, which was a public meeting. (See Exhibit 1 ¶ 10). The public meeting has an open floor for citizens to speak, which is also referred to as the "hearing of the citizens". (See Exhibit 1, ¶ 13). During the "hearing of the citizens" portion of the February 7, 2024, meeting, Plaintiff criticized Business Administrator Eric Pennington ("Pennington") concerning alleged corruption.

Plaintiff spoke during her allotted time and concluded when the President noted that her time had expired. (See Exhibit 1, ¶ 14). When the "hearing of the citizens" concluded, Former President asked that the public not to speak while the council members and administrators were responding, however Former President did not give any further instructions beyond that comment. (See Exhibit 1, ¶ 17).

Following Former President's statement, Pennington addressed the chamber on behalf of the administration and attempted to discredit Plaintiff in an increasingly

hostile manner while addressing Plaintiff's corruption allegations. (See Exhibit 1, ¶ 21). After about a minute of Pennington's attack on Plaintiff, he directly instructed Plaintiff, while misnaming her as Mildred, "Mildred, if you have some information, bring it forward. If you believe that I am corrupt, don't imply it state it. If you believe that I have done something wrong, anything wrong, have engaged in any fraudulent conduct, state it. Bring it out. Tell it to all these people so at minimum I can defend myself…" (See Exhibit 1).

When Plaintiff began to respond to him, as she was explicitly directed to do, Pennington responded, "you can stand over there in the corner and shout from the hilltops…" in a mocking manner. (See Exhibit 1, ¶ 22). Plaintiff attempted to respond to Pennington's hostile and personal attacks as well as to comply with his explicit instructions to tell her specific allegations to "all these people" about his corruption but she was only able to speak for a few seconds before she was interrupted by McIver. (See Exhibit 1, ¶ 26).

McIver stated "excuse me, excuse me, Ms. Bomani umm madam clerk please note that Ms. that Ms. Bomani's disruption as well as we are going to place a ban for disruption" and ordered the Newark Police to remove Plaintiff from the City Council meeting without affording the Plaintiff the opportunity to correct her behavior by issuing a warning prior to the removal. (See Exhibit 1).

On February 16, 2024, Plaintiff received an email informing her that she would be excluded from Newark City Hall and from public speaking at the February 21, 2024 and February 27, 2024 meetings because of her alleged disorderly conduct. (See Exhibit B to the November 17, 2025 Certification of Munirah El Bomani, hereinafter "Bomani Cert.").

**February 21, 20224 Order to Show Cause in New Jersey State Superior Court**

On February 21, 2024, Plaintiff, appearing pro se, filed an order to show cause, seeking preliminary and permanent injunctive relief and monetary damages under Docket No. ESX-C-39-24 in New Jersey Superior Court. See pages 2-9 of Exhibit G to the Striplet Cert, ECF 9.  On February 23, 2024, that matter was then transferred from the Chancery Division to the Law Division. See Striplet Cert, Exhibit F; ECF 9. On May 9, 2024, while Plaintiff was still appearing pro se, Defendants filed a cross motion for dismissal. Trans ID: LCV20241193870. Plaintiff's order to show cause was heard on May 13, 2024. Trans ID: LCV20241219894; Trans ID: LCV20242002260. Plaintiff's application was denied as moot, since her ban had expired at that time. Trans ID: LCV20241219894; Trans ID: LCV20242002260. The cross-motion for dismissal was reserved to, and argued on, August 8, 2024. Trans ID: LCV20242002241; Trans ID: LCV20242002260. The court ordered that the claims brought under the NJCR were dismissed without prejudice and that Plaintiff would have until September 9, 2024 to file an Amended

Complaint with additional facts and claims consistent with the Court's ruling. Trans ID: LCV20242002260 (Emphasis added). See pages 10-20 of Exhibit G to the Stripplet Cert; ECF 9.

Nowhere in the court's Order did the court "determine that the video recordings of Plaintiff's outburst during the Council session did not reflect exclusion on the basis of the content of her speech, but rather exclusion based on the timing and her failure to abide by both council rules, and express warnings from the Council President" as erroneously stated in Defendant's brief. See Id; but see Defendants' Brief in Support of the Motion to Dismiss. Rather, the Court merely found that that the Plaintiff's first factual basis for an NCRA claim "failed to state a claim for relief". Trans ID: LCV20242249773. Again, Plaintiff was appearing pro se during the motion practice at that juncture and the factual basis for her NJCRA claim was distinct from that which was now asserted in the instant action.

In accordance with the Court's Order, Plaintiff filed an Amended Complaint with the assistance of counsel on September 9, 2024. Trans ID: LCV20242249773. This Amended Complaint wholly differed from the Order to Show Cause that was initially filed by Plaintiff and this Amended Complaint presented additional facts, arguments, context, claims and made multiple specific references to the Defendants' banning Plaintiff from attending future Council sessions. (See generally pages 10-20 of Exhibit G to the Stripplet Cert., ECF 9). The entirety of the Amended Complaint

made it clear that Plaintiff was raising issue with not only her removal, but the ensuing bans received, and the statutory provisions relied on by Defendants as well. Defendants then moved to dismiss the Amended Complaint.

Upon information and belief, due to a ministerial error, a lack of prosecution warning was uploaded by the Clerk of the Court for Essex County despite Plaintiff filing a letter to file explicitly stating that there was no lack of prosecution and that an Amended Complaint had been filed. Despite Plaintiff's letter informing the Court of this error, the Clerk then administratively dismissed the case.

While the motion to dismiss was pending, Plaintiff cross moved for an Order to Show Cause and Motion to Amend the Complaint to include Council President Crump. The court denied all motions without prejudice, however, the request for emergent injunctive relief regarding a prospective ban was denied as moot since the date of the meeting Plaintiff was excluded from had already passed.

## September 27, 2024 Removal and Subsequent Ban

On September 27, 2024, Plaintiff attended and spoke at the Newark City Council meeting, which was also a public meeting. (See El Bomani Cert., ¶ 13).

During the "hearing of the citizens" portion of the meeting, Plaintiff expressed her distaste with the lack of transparency as it related to the budget and how it was being spent, a sentiment shared by many of the community members who spoke before and after Plaintiff during this meeting. (See El Bomani Cert., ¶ 14). Following

the "hearing of the citizens" portion of the meeting, one of the city council members proceeded to disregard the content of the community members' concerns and instead chose to fixate on irrelevant word choice. (See El Bomani Cert., ¶ 15). This caused outrage amongst community members, prompting Ms. Jackson, an attendee who spoke during the public comment period, to respond, subsequently resulting in her removal from the meeting. (See El Bomani Cert., ¶ 16). Plaintiff attempted to voice her concern over improper removal of Ms. Jackson, to which Crump rose his voice at Plaintiff and ordered her removal from the meeting by Newark Police without opportunity to address whatever conduct Crump found to be improper. (See El Bomani Cert., ¶¶ 16-17).

On September 27, 2024, Plaintiff received a letter informing her that she would be banned from Newark City Hall and from public speaking at the October 2, 2024 meeting. (See El Bomani Cert., Exhibit B). Similar to the letter Plaintiff received on February 16, 2024, there was no mention of any rule that codified future bans of community members.

Plaintiff is not the only community member who has been banned from Newark City Hall and from public speaking at future meetings. In the past two (2) years, at least seven other individuals have received letters similar to Plaintiff's banning them from future meetings ranging from one meeting to indefinitely pending an investigation. (See El Bomani Cert., Exhibit C).

Plaintiff recently attended and spoke at a November 7, 2025 meeting, wherein she was improperly removed without being given an opportunity to cease any complained of conduct. See El Bomani Cert ¶14. On November 7, 2025 Plaintiff received another ban notice for the upcoming meeting on November 25, 2025. See El Bomani Cert., Exhibit E.

## **ARGUMENT**

In evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court's inquiry is a limited one. It is well established that the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief" *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002). The question is not "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims" *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

To that end, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), the purpose of which is to "give the defendant fair notice of what the... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The factual allegations, taken as true, must be sufficient to "raise a right to relief above the speculative level" and state a claim that is "plausible on its face." *Id.* at 555, 570.

A claim is facially plausible when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Thus, a plaintiff must allege sufficient facts to "justify moving the case beyond the pleadings to the next stage of litigation." *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008).

A complaint that contains "either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory" will not be dismissed. *Montville Twp. v. Woodmont Builders LLC*, 2007 WL 2261567 at 2 (3d Cir. 2007). While a complaint need not set forth detailed factual allegations, it must be more than a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Defendants demonstrate a fundamental misunderstanding of this standard, particularly as to bare legal conclusions. They omit crucial language from *Connelly v. Lane Const. Corp.,* 809 F.3d 780 (3d Cir. 2016), which makes clear that the "conclusions" that "are not entitled to assumptions of truth" are "mere restatements of the elements of a claim." (*Id.* [internal citations omitted]). Tellingly, the *Connelly* Court ruled in the Plaintiff's favor.

Defendants' attempt to expand the scope of the Court's review is similarly improper. While Defendants accurately note that courts may "'consider the complaint in its entirety, as well as…documents incorporated into the complaint by reference, and matters of which a court may take judicial notice'" *Institutional*

*Investors Grp. v. Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009), they conveniently omit the controlling standard reaffirmed in that same discussion: "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." (*Id.* [internal citation omitted]). Tellingly, *Investors* involves the heightened pleading standard of a securities fraud case, which is exceedingly high.

And although courts may consider undisputed authenticated records, such as public records, s*ee Griswold v. Driscoll*, 625 F. Supp. 2d 49 (D. Mass. 2009), *cert. denied*, 562 U.S. 1179 (2011); *Beverly Enters., Inc. v. Trump*, 182 F.3d 183, 190 n.3 (3d Cir. 1999), Defendants' reliance on this principle is a prelude to a patently improper argument. They argue, citing *Scott v. Harris* (550 U.S. 372 (2007), that the Court should not view disputed facts in the light most favorable to the non-movant. Defendants omit the dispositive language from their quote: "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for *summary judgment*." (*Id.* [emphasis added]). *Scott* is a summary judgment case, and its standard is inapplicable here.

**ARGUMENT I.**
**Defendants are Being Sued in Their Official Capacity, Therefore**
**Service is Proper and Qualified Immunity Does Not Apply.**

Defendants McIver and Crump are sued exclusively in their official capacities. This designation is dispositive of Defendants' arguments regarding both service of process and immunity.

An official-capacity suit is "only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 [1978]); see also see also *United States v. Classic*, 313 U.S. 299, 326 (1941). The suit is against the municipal entity itself, not the named individuals. *Id.* at 166. Accordingly, service of process upon defendants sued in their official capacity is governed by the rules for serving the government entity.

Under Federal Rule of Civil Procedure 4(j)(2) and New Jersey Court Rule 4:4–4(a)(8), service upon a municipality like the City of Newark is effected "by serving a copy of the summons and complaint ... on the presiding officer or on the clerk or secretary thereof." *Coleman v. Kaye*, 87 F.3d 1491, 1500 (3d Cir. 1996). Here, Defendants concede that the City of Newark was properly served. Because the entity was served, and the official-capacity suit is, in law, a suit against that entity, service was proper as to McIver and Crump. Their argument for dismissal based on improper service is therefore meritless.

Furthermore, Defendants' invocation of qualified immunity is similarly misplaced. It is black-letter law that in an official-capacity action, personal immunity defenses are "unavailable." *Graham*, 473 U.S. at 167; *see also Owen v. City of Independence*, 445 U.S. 622 (1980). This suit seeks relief from the government entity, and the doctrine of qualified immunity, which protects officials only in their individual capacities, does not apply.

## ARGUMENT II.
### The Official Capacity Claims are Not Subject to Dismissal

McIver arguments that the official capacity claims against her must be dismissed due to her departure from office is contrary to the plain language of the Federal Rules of Civil Procedure. Furthermore, Crumps arguments that that incorporate those set forth in City of Newark's motion to dismiss are equally unsupported by the applicable authorities. *See* ECF Doc. 8.

### 1. Federal Rule of Civil Procedure 25(d) Expressly Precludes Dismissal of McIver.

Defendants' argument is predicated on a selective reading of Federal Rule of Civil Procedure 25(d). The rule, in its entirety, mandates the opposite of dismissal:

> "*An action does not abate* when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office *while the action is pending.* The officer's successor is automatically substituted as a party. *Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution.*"

FED. R. CIV. P. 25(d) (emphasis added).

The rule's plain text provides for automatic substitution, not abatement or dismissal. Defendants' motion, which seeks a remedy the rule expressly forbids, is therefore legally baseless. This is an official-capacity suit, which "is only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The municipality remains the real party in interest, and the departure of its agent is of no legal consequence to the claim's viability.

Furthermore, the Complaint alleges municipal liability based on unconstitutional policies "as applied." Such a claim is necessarily predicated on the specific actions of the municipal agent who enforced those policies—in this case, McIver. Rule 25(d) anticipates this exact scenario by providing that "any misnomer not affecting the parties' substantial rights must be disregarded." Defendants have failed to articulate any prejudice or effect on their substantial rights. The municipality has been on notice of these claims since service was effected. The Complaint's reference to McIver properly identifies the factual basis for the as-applied municipal claim and is, at worst, a "misnomer" that this Court must disregard.

### *2. The Remaining Official Capacity Claims Must Proceed against Crump.*

The remainder of Defendant Officials' arguments rely on and incorporate the arguments as set forth in Defendant Newark's moving brief. A copy of which is attached hereto as Exhibit 1, Pages 5 to 29. Accordingly, Plaintiff incorporates and relies on each and every argument made in Plaintiff's Opposition to Newark's Motion to Dismiss. See ECF Doc. 14. It is clear that when the Court views all factual allegations as true, construes the complaint in the light most favorable to Plaintiff, then it must rule that Plaintiff may be entitled to relief.

### ARGUMENT III.
### PLAINTIFF MUST BE AFFORDED THE OPPORTUNITY TO AMEND EVEN IF THE COURT IS INCLINED TO DISMISS CERTAIN COUNTS OF THE COMPLAINT

Moreover, in the event a complaint fails to state a claim, unless amendment would be futile, the District Court must give a plaintiff the opportunity to amend her complaint. *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir.2000). Plaintiff need not seek leave to amend as part of her opposition. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008). The Third Circuit courts have instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir.2002) (citing *Shane v. Fauver*, 213 F.3d 113, 116 [3d Cir.2000]).

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion for dismissal. In the alternative, Plaintiff asks that the Court recognize her right to amend any dismissed portion of the Complaint.

Dated: November 14, 2025

Respectfully submitted,
ANDERSON LAW PLLC
Attorney for Plaintiff


_____/s/ Gregory Byrnes_____
By: Gregory A. Byrnes