UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| Munirah El Bomani, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 2:25-cv-13439-JKS-JRA |
| | : | |
| -against- | : | Return Date: 12/2/2025 |
| | : | |
| CITY OF NEWARK, CITY OF NEWARK MUNICIPAL COUNCIL, FORMER CITY OF NEWARK MUNICIPAL COUNCIL PRESIDENT LAMONICA MCIVER, CITY OF NEWARK MUNICIPAL COUNCIL PRESIDENT C. LAWRENCE CRUMP, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS CITY OF NEWARK'S MOTION DO DISMISS

Gregory A. Byrnes:

Anderson Law

104 W 27th Street, 11th Floor

New York, New York
Attorneys for Plaintiff Munirah El Bomani

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................... 2

TABLE OF AUTHORITIES ................................................................................... 3

PRELIMINARY STATEMENT ............................................................................ 5

PROCEDURAL HISTORY AND STATEMENT OF FACTS ................................................. 7

   LEGAL STANDARD ......................................................................................... 7

Argument I COUNTS TWO, SIX AND EIGHT ARE PROPERLY PLED ........................................ 7

A.   Plaintiff's Allegations of Content-Based Restrictions on Speech cannot be barred pursuant to the Law of the Case Doctrine ................................................................................. 7

B.   Plaintiff Sufficiently Alleges Underlying Constitutional Violations for Counts Two, Six, and Eight. ........................................................................................................... 10

Argument II COUNTS ONE AND THREE ARE PROPERLY PLED. ............................................. 16

A.   Plaintiff's Sufficiently Alleges Underlying Constitutional Violations for Counts One and Three 16

B.   Plaintiff is Not Estopped from Litigating the Issue of Whether the City's Rules are Facially Unconstitutional ................................................................................................ 23

Argument III COUNTS FOUR FIVE SIX AND EIGHT ARE PROPERLY PLED. ............................. 24

Argument IV PLAINTIFF'S CLAIMS ARE PROPERLY PLED UNDER MONELL. ....................... 28

Argument V PLAINTIFF'S CLAIMS UNDER COUNT SEVEN ARE PROPERLY PLED ........... 29

Argument VI PLAINTIFF MUS BE AFFORDED THE OPPORTUNITY TO AMEND HER COMPLAINT EVEN IF THE COURT FINDS THAT CERTAIN COUNTS ARE SUBJECT TO DISMISSAL ................................................................................................... 31

CONCLUSION ...................................................................................................... 32

# TABLE OF AUTHORITIES

## Cases

*Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011) ........................................................................................................................................13

*Arizona v. California*, 460 U.S. 605, 618 (1983) ..................................................................8

*Bd. of County Comm'rs v. Umbehr*, 518 U.S. 668, 671–72, (1996) ....................... 12, 29

*Brown v. Louisiana*, 383 U.S. 131, 143 (1966) ................................................................24

*Brown v. State of La.*, 383 U.S. at 131 .............................................................................19

*Burson v. Freeman*, 504 U.S. 191, 196 (1992) ...............................................................10

*citing R.A.V. v. St. Paul*, 505 U.S. 377, 382–90 (1992) ...................................................10

*Del. River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 573 n.10 (3d Cir. 2002) .......23

*Eichenlaub v. Township of Indiana*, 385 F.3d 274, 280 (3d Cir. 2004) ........................11

*Eichenlaub v. Twp. of Indiana*, 385 F.3d 274 (3d Cir. 2004) ............................... 13, 29

*Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 280 (3rd Cir. 2004) ..............................16

*Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282–83 (3d Cir. 2004) ..........................10

El Bomani v. Baraka, CV 20-655 (KM) (ESK), 2021 WL 2349761 (D.N.J. June 9, 2021) ........23

*Farina v. Nokia Inc.*, 625 F.3d 97, 117 n.21 (3d Cir. 2010) ..............................................8

*FCC v. League of Women Voters*, 468 U.S. 364, 381 (1984) ........................................10

*First National Bank of Boston v. Bellotti*, 435 U.S. 765, 783 (1978) ............................11

*Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106 (2001) ..................................16

*Grayned*, 408 U.S. at 108–09 (1972) .............................................................................18

*Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir.2002) ...............................31

*Griswold v. Connecticut*, 381 U.S. 479, (1965) ..............................................................11

*Groman v. Twp. of Manalapan*, 47 F.3d 628 (3d Cir. 1995); *citing Gomez v. Toledo*, 446 U.S. 635, 640 (1980) .....................................................................................................10

*Hamilton v. Leavy*, 322 F.3d 776, 786–87 (3d Cir. 2003) ..............................................8

*Ison v. Madison Local Sch. Dist. Bd. of Educ.*, 3 F.4th 887 (6th Cir. 2021) ................17

*Kleindienst v. Mandel*, 408 U.S. 753, 762, (1972) .........................................................11

*Kolender v. Lawson*, 461 U.S. 352, 357 (1983) .............................................................19

*Kolender v. Lawson*, 461 U.S. 352, 357, (1983) ............................................................18

*Leonard v. Robinson*, 477 F.3d 347 (6th Cir. 2007) .......................................................16

*Liebler v. City of Hoboken*, 15-8182 (KM) (MAH), 2016 WL 3965198 (D.N.J. July 21, 2016) 10, 13, 15

*Liebler v. City of Hoboken*, No. 15-8182 (KM) (MAH), 2016 WL 3965198, at *3 (D.N.J. July 21, 2016) ...........................................................................................................................10

*Martin v. City of Struthers, Ohio*, 319 U.S. 141 (1943) ................................................11

*Matal v. Tam*, 582 U.S. 218 (2017) .................................................................................17

*McTernan v. City of York, PA*, 564 F.3d 636 (3d Cir. 2009) ..........................................30

*Montana v. United States*, 440 U.S. 147, 153 (1979) ....................................................23

*New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964) ..........................................................16

*Olasz v. Welsh*, 301 Fed.Appx. 142, 144 (3d Cir. 2008) ...............................................................11

*PDX N., Inc. v. Comm'r N.J. Dep't of Labor & Workforce Dev.*, 978 F.3d 871, 881 n.10 (3d Cir.
    2020) ..............................................................................................................................................9

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983) ...............................11

*Phillips v. Cnty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008) ........................................................31

*Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)...........................................24

*Ramos v. Flowers*, 429 N.J. Super. 13, 21 (App. Div. 2012)........................................................27

*Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir.2001) ..................................................................12, 29

*Rivkin v. Dover Twp. Rent Leveling Bd.*, 143 N.J. 352, 373 (1996)..............................................28

*See Good News Club v. Milford Central School*, 533 U.S. 98, 106–07 (2001).............................12

*See Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011) .................................29

*Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir.2000) ......................................................................31

*Slowinski v. Valley Nat. Bank*, 264 N.J. Super. 172, 181 (App. Div. 1993) ...................................9

*Stanley v. Georgia*, 394 U.S. 557, (1969)....................................................................................11

*State v. Smith*, 46 N.J. 510 (1966) ....................................................................................19, 20, 22

*Stomel v. City of Camden*, 192 N.J. 137 (2007)...........................................................................28

*United States ex rel. Petratos v. Genetech Inc.*, 855 F.3d 481, 493 (3d Cir. 2017)..........................8

*Village of Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 102 (1982) .................18

*Walsh v. Enge*, 154 F. Supp. 3d 1113 (D. Or. 2015) ...................................................................22

## Statutes

42 U.S.C. § 1983 ...........................................................................................................................16

42 U.S.C. §1988 ...........................................................................................................................20

### Rules

Fed R. Civ. P. 12(b)(6)..................................................................................................................11

Rule 12(b)(6) ................................................................................................................................12

## PRELIMINARY STATEMENT

Plaintiff Munirah El Bomani ("Plaintiff") respectfully submits this brief in opposition to the motion to dismiss filed by defendants City of Newark ("Newark"), and City of Newark Municipal Council ("Municipal Council"). *See* ECF No. 8.

The New Jersey Open Public Meetings Act and the First Amendment of the United States Constitution both explicitly safeguard an individual's freedom of speech, assembly, and right to petition the government to remedy grievances. (*See* Open Public Meetings Act, N.J.S.A. § 10:4-6; *See also* U.S. Const. amend. I). In defiance of these constitutional rights, Newark, Municipal Council, Former Council President Lamonica McIver ("McIver"), and Current President C. Lawrence Crump ("Crump", McIver, Crump, and Newark collectively defined as "Defendants") have repeatedly violated Plaintiff's First Amendment rights by removing her from meetings based on her view point while engaged in acts of pure speech, unconstitutionally banned her from future Newark Municipal Council meetings, and subjected Plaintiff to police violence without any legitimate government interest or statutory basis. Despite receiving a warning letter from the ACLU informing them that their actions are unconstitutional, Defendants have continued to bully their critics into silence while operating behind a cover of censorship, even going so far as to cut live video and audio feed from meetings whenever a member of the public is being targeted since this case was filed.

Defendants' arguments misconstrue the law and demonstrate a fundamental misunderstanding of the applicable standards for a motion to dismiss, preclusionary rules, and the fundamental constitutional protections of both the United States and New Jersey Constitutions. As set forth below, Defendants have prohibited Plaintiff from exercising her first amendment rights while also acting completely outside the scope of their own Municipal Council Code of Conduct.

Defendants' reliance on Rules XVIII and XIX of the Newark Municipal Council's Code ("the Code") is misplaced. These rules establish a framework of unconstitutionally vague, subjective, and viewpoint-based restrictions on public participation. Rule XVIII, in particular, details these impermissible restrictions, which are compounded by the additional vague standards set forth in Rule XIX.

More fundamentally, even if this Court were to set aside the patent unconstitutionality of the Code's language, Defendants' conduct finds no sanction within it. The Code is silent on any authority to prospectively ban a community member from future meetings. Such a ban, imposed without any assessment or individualized finding that violent conduct or harm might ensue, constitutes a patently unconstitutional prior restraint.

Accordingly, the relevant Code is unconstitutional, and Defendants' actions are unconstitutional. The restrictions on Plaintiff's speech at Newark Municipal Council meetings and subsequent bans have caused Plaintiff to suffer irreparable harm. Defendants' gross violation of Plaintiff's right to participate in the democratic process and to be heard cannot continue.

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

Plaintiff incorporates by reference the procedural history and statement of facts as set forth in Plaintiff's opposition to the "Defendant Officials'" moving brief (EC Doc. 14) as if set forth herein in its entirety.

## ARGUMENT
## LEGAL STANDARD

Plaintiff incorporates by reference the legal standards set forth in the brief submitted in opposition to the "Defendant Officials'" moving brief (ECF Doc. 14) as if set forth in herein in its entirety.

### Argument I
### COUNTS TWO, SIX AND EIGHT ARE PROPERLY PLED

### A. Plaintiff's Allegations of Content-Based Restrictions on Speech cannot be barred pursuant to the Law of the Case Doctrine

Defendants' argument under the law of the case doctrine is fundamentally flawed and misapplies the doctrine in at least three dispositive ways. First, the doctrine applies only to prior rulings within the same case, not to separate, prior litigations. Second, the doctrine governs relitigation of legal rules, not the factual

findings Defendants seek to import. Third, even if the doctrine were applicable, which it is not, the prior matters were not "actually decided" on the merits in a manner that would preclude Plaintiff's current claims.

The law of the case doctrine is a rule of practice "meant to maintain consistency and avoid reconsideration of matters once decided during the course of a *single continuing lawsuit*." *United States ex rel. Petratos v. Genetech Inc.*, 855 F.3d 481, 493 (3d Cir. 2017) [emphasis added] [internal quotation marks and citation omitted]). The doctrine "only applies *within the same case*." *Farina v. Nokia Inc.*, 625 F.3d 97, 117 n.21 (3d Cir. 2010). Its entire purpose is to govern "subsequent stages *in the same case*." *Arizona v. California*, 460 U.S. 605, 618 (1983) (emphasis added).

Defendants ignore this foundational requirement. They ask this Court to apply the doctrine based on two previous, and completely separate, cases: (1) the June 9, 2021 dismissal of Plaintiff's 2020 *pro se* Complaint, and (2) the subsequent administrative dismissal of Plaintiff's Order to Show Cause in New Jersey State Superior Court. As neither of these litigations constitutes an "earlier stage of the same litigation," *Hamilton v. Leavy*, 322 F.3d 776, 786–87 (3d Cir. 2003), the doctrine is, by its very definition, inapplicable.

Second, Defendants misapprehend the *scope* of the doctrine. The doctrine applies when a court "decides upon a *rule of law*." *Arizona*, 460 U.S. at 618. It does

not apply to disputed findings of fact. Defendants, however, do not ask this Court to adopt a prior *legal ruling*. Instead, they improperly seek to bind this Court to their preferred *factual interpretation* of video evidence from prior, unrelated matters. This attempt to transform a disputed factual assertion—the motive of a council member, as allegedly captured on video—into a binding "rule of law" is meritless.

Third, even if the doctrine could be so distorted as to apply here (it cannot), it only has effect where the issue has been "actually contested and decided." *Slowinski v. Valley Nat. Bank*, 264 N.J. Super. 172, 181 (App. Div. 1993). Defendants point to no such decision. The prior federal suit involved the dismissal of a *pro se* complaint. The state court matter was administratively dismissed for lack of prosecution due to a ministerial error. Neither of these dispositions "expressly" or "necessarily resolved," *PDX N., Inc. v. Comm'r N.J. Dep't of Labor & Workforce Dev.*, 978 F.3d 871, 881 n.10 (3d Cir. 2020), the factual question of whether Defendants engaged in viewpoint discrimination.

Finally, Defendants' invitation for this Court to review video footage and make dispositive factual findings is improper at the motion-to-dismiss stage. The analysis of the Honorable Kevin McNulty on this precise issue is insightful:

> The plaintiff has provided a link to a video of the Council meeting in question. I do not regard the video as comparable to, say, the written contract upon which an action for breach is based, which I would surely consider. Such a video might be considered on a motion to dismiss to establish, for example, that a particular identifiable statement was made. This is not such a case. The context of the statements, the

identities and tone of voice of the speakers, the discussions that may have preceded or surrounded the meeting, and so on, all present issues of factual interpretation. In short, the video is not the sort of uncontroversial document that may itself settle the claims one way or the other. I believe that consideration of this video in isolation from its evidentiary context has the capacity to distort the analysis. I therefore exercise my discretion to decline consideration of it on this motion to dismiss.

*Liebler v. City of Hoboken*, No. 15-8182 (KM) (MAH), 2016 WL 3965198, at *3 (D.N.J. July 21, 2016). This Court should similarly decline Defendants' invitation to engage in premature fact-finding.

B.    **Plaintiff Sufficiently Alleges Underlying Constitutional Violations for Counts Two, Six, and Eight.**

A prima facie case under § 1983 requires a plaintiff to demonstrate: (1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law." *Groman v. Twp. of Manalapan*, 47 F.3d 628 (3d Cir. 1995); *citing Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

The courts long maintained that "except for certain narrow categories deemed unworthy of full First Amendment protection–such as obscenity, 'fighting words' and libel – all speech is protected by the First Amendment." *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282–83 (3d Cir. 2004); *citing R.A.V. v. St. Paul*, 505 U.S. 377, 382–90 (1992) . "Political speech is of course entitled to the highest level of

First Amendment protection." *Liebler v. City of Hoboken*, 15-8182 (KM) (MAH), 2016 WL 3965198 (D.N.J. July 21, 2016); *citing Burson v. Freeman*, 504 U.S. 191, 196 (1992); *also citing FCC v. League of Women Voters*, 468 U.S. 364, 381 (1984). This heightened protection is given to speech in public forums as they have traditionally been forums devoted to assembly and debate. *See Besler*, 201 A.2d. at 570. Freedom of speech includes not only the right to speech, but the right to receive speech as well. *Martin v. City of Struthers, Ohio*, 319 U.S. 141 (1943). The Supreme Court subsequently recognized the right to receive information in several other decisions. *See, e.g., First National Bank of Boston v. Bellotti*, 435 U.S. 765, 783 (1978) ("First Amendment ... afford[s] the public access to discussion, debate, and the dissemination of information and ideas"); *Griswold v. Connecticut*, 381 U.S. 479, (1965); *Stanley v. Georgia*, 394 U.S. 557, (1969); *Kleindienst v. Mandel*, 408 U.S. 753, 762, (1972).

A public meeting, or the public portion of a City Council meeting, is considered a "limited public forum." *See generally Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). In a limited public forum, any restrictions on speech must be narrowly drawn, and "designed to confine the forum to the limited and legitimate purpose for which it was created." *Eichenlaub v. Township of Indiana*, 385 F.3d 274, 280 (3d Cir. 2004). "[U]nder contemporary public forum jurisprudence, a designated (as opposed to traditional) forum is reviewed under a

sliding standard that allows for content-related regulation so long as the content is tied to the limitations that frame the scope of the designation, and so long as the regulation is neutral as to viewpoint within the subject matter of that content." (*Id.* at 280–81; *Olasz v. Welsh*, 301 Fed.Appx. 142, 144 (3d Cir. 2008)). In sum, only content-neutral restrictions to keep the meeting on-topic or avoid disruptions are permitted. (*Id.*). Any viewpoint-based discrimination is expressly forbidden. *See Good News Club v. Milford Central School*, 533 U.S. 98, 106–07 (2001). Here, Plaintiff was removed because she voiced her criticisms of Defendants and specifically brought attention to the perceived corruption that the business administrator had engaged in. Discussing how business is conducted is well within the scope of a City Counsil meeting. However, Defendants have engaged in viewpoint-based discrimination by removing Plaintiff under threat of police violence from meetings for accusing the business administrator of corruption and voicing criticism of Defendants generally during public meetings.

Defendants, in retaliation of Plaintiff speaking against them, attempt to silence Plaintiff by threats of police violence and by refusing her access to future city council meetings. A citizen may charge the government hurt them when done in retaliation for criticism against those same authorities. *See Bd. of County Comm'rs v. Umbehr*, 518 U.S. 668, 671–72, (1996). Constitutional retaliation claims are analyzed under a three-part test, wherein a plaintiff must prove that (1) he engaged in

constitutionally-protected activity; (2) the government responded with retaliation; and (3) the protected activity caused the retaliation. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir.2001).

Retaliation claims from *citizens*, not public employees, have no requirements that a plaintiff show that their speech is on a matter of public concern. *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274 (3d Cir. 2004). As set forth in the Complaint, Plaintiff has sufficiently plead retaliation against the Defendants. See Complaint at ¶136-41 First, Plaintiff was at a city hall meeting discussing Defendants' conduct, which is a constitutionally protected activity, namely speaking out against corruption at a municipal city council meeting. Second, Plaintiff has detailed that the government responded by violating her free speech rights through removal and subsequent bans along with subjecting her to threats of police violence. Third, Plaintiff has alleged that this was done because she was attempting to speak out against corruption and voice her dissatisfaction with the municipal council.

Here, Plaintiff's allegation that Defendants restrictions were content-based, despite the possibility of content-neutral motivations, must be treated as true. *Liebler v. City of Hoboken*, 15-8182 (KM) (MAH), 2016 WL 3965198 (D.N.J. July 21, 2016). The burden is on Defendants to prove that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). Defendants do not attack the sufficiency of the pleading, but rather present

facts in a manner most beneficial to their case which by their own admission, is inappropriate and irrelevant. Plaintiff has identified the state actors who were acting under color of state law as well as the rights, privileges, and immunities that were secured to her by the Constitution. Nothing further is required at this stage.

Tellingly, the entirety of Defendants arguments are irrelevant, as they attempt to act as a finder of fact, making conclusions on crucial facts that simply cannot be determined as part of this motion. Defendants do this at length rather than addressing the sufficiency of the pleadings contained in the Complaint as is required. Defendants erroneously argue that it would be appropriate to conclude that the *motivation* for Plaintiff's removal was content-neutral simply because the video indicates that Plaintiff was removed during the portion of time allotted for another speaker. The *Liebler* court summarized the flaws in Defendants arguments succinctly:

> Part of each Hoboken City Council meeting is specifically set aside for public comment. The parties agree that individuals are limited to five minutes, but may speak on 'any subject relevant to the affairs and interests of the City of Hoboken.' That is not to say that a person has a license to be disruptive, to filibuster, or to hijack the meeting. See Eichenlaub, 385 F.3d at 280. But whether action taken against a speaker is motivated by permissible considerations, or by that person's message, cannot be settled on a motion to dismiss, even one that attaches a video recording of the session. Whether the speaker or the moderator is to blame for a disruption, or whether the speaker was disruptive at all, is a judgment call for a fact finder. Nor can the litigants jump the gun and bring what amounts to a summary judgment motion, even if the proceedings were recorded… Interpreting the allegations of the

Complaint in the light most favorable to the plaintiff, as I must, I cannot grant the motion to dismiss. That is not to say that the plaintiff has established or proven a constitutional violation; far from it. But he has alleged one…. The claim that the viewpoint discrimination was not the real reason for silencing plaintiff, or that if it was then certain defendants did not approve, is a factual one."

*Liebler v. City of Hoboken*, 15-8182 (KM) (MAH), 2016 WL 3965198 (D.N.J. July 21, 2016) (internal citations omitted).

Here, as in *Liebler*, Defendants' arguments as to motivation, with their sole evident being the video of the meeting, is wholly misplaced in inapplicable.

Defendants representation of the events cannot be considered as they, by their own admissions, are unreliable narrators. Defendants argue that "Plaintiff tried to force a back-and-forth argument with the BA". However, the  recording of the meeting clearly shows that Business Administrator plainly and unequivocally addressing Plaintiff by name, albeit the wrong name, and demanding bring her complaint forward. Business Administrator specifically said "Mildred, if you have some information, bring it forward. If you believe that I am corrupt, don't imply it state it. If you believe that I have done something wrong, anything wrong, have engaged in any fraudulent conduct, state it. Bring it out. Tell it to all these people so at minimum I can defend myself…" See ¶10 of the Complaint. Plaintiff then responds to this demand, as she was explicitly instructed to do. Defendants' argument that Plaintiff tried to force a "back-and-forth" is not only wholly irrelevant on a Motion to Dismiss for Failure to State a claim standard, but also patently false.

## Argument II
## COUNTS ONE AND THREE ARE PROPERLY PLED.

### A. Plaintiff's Sufficiently Alleges Underlying Constitutional Violations for Counts One and Three

As set forth at length above, Plaintiff has a constitutional right to free speech, which is subject to the highest levels of protection in the context of speaking on matters of public interest at a public forum. In a forum like a municipal council meeting, "[a]ny restrictions on speech must be viewpoint neutral and must be 'reasonable in light of the purpose served by the forum.'" *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 280 (3rd Cir. 2004); *quoting Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106 (2001). "Even those who advocate the most narrow interpretation of the freedom of speech agree that in a democratic forum like a [council] meeting, the [government] should abstain from regulating speech." *Leonard v. Robinson*, 477 F.3d 347 (6th Cir. 2007).

The First Amendment is "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). The U.S. Court of Appeals for the Sixth Circuit, relying on Supreme Court precedent, invalidated a school board policy that restrict ed so-called "abusive," "personally directed," and "antagonistic" public comments during board

meetings. *Ison v. Madison Local Sch. Dist. Bd. of Educ.*, 3 F.4th 887 (6th Cir. 2021); *citing Matal v. Tam*, 582 U.S. 218 (2017).

The appeals court explained in these cases that these restrictions "prohibit speech because it opposes, or offends, the Board or members of the public, in violation of the First Amendment." (*Id.*) However, Rule XVIII of the Newark Municipal Code bans citizens from making comments that are "disruptive" or "statements at Council Members or City Officials that are defamatory or malicious", it seeks to prohibit speech only when it opposes or offends the Board or members of the public.

Plaintiff is not the first or only one to alert Defendants' to the fact that Rule XVIII of the Newark Municipal Code is unconstitutional. In 2019, the ACLU informed Defendants by letter in detail that this rule is unconstitutional as it imposes viewpoint-based restrictions at length. (*See* Bomani Cert Ex. D.) Here, whether a speaker's statements are "malicious," "defamatory" or "obscene" are completely tied to the government actor who is enforcing the speaking policies viewpoint. Calling one council member a liar might be defamatory to Crump while the other council members could agree that the member in question is, in fact, a liar. The same is true for allegations of corruption levied at a Business Administrator, as is the case here.

Here, Defendants have used Rule XVIII of the Newark Municipal Code prohibits speech only when it opposes or offends the Board or members of the public. This makes it facially unconstitutional. Banning language that is deemed "malicious", "defamatory" or "obscene" is a per se viewpoint-based restriction and cannot be justified in the context of a public forum, even if it is a limited public forum. Tellingly, nowhere do Defendants address this in their motion to dismiss.

The words identified above, along with "excessively loud," or "disruptive" are also unconstitutional as they are unduly vague. Although the "void-for-vagueness" doctrine was originally constructed to invalidate penal statutes that do not "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited," *Kolender v. Lawson*, 461 U.S. 352, 357, (1983), courts have transplanted this due process principle into the First Amendment setting. First Amendment vagueness overlaps with, but is distinct from, an overbreadth challenge. Like the overbreadth doctrine, a meritorious First Amendment vagueness challenge will annul an unclear law that "chills" protected First Amendment activities. *Grayned*, 408 U.S. at 108–09 (1972).

Because "vagueness" is a due process problem, courts can invalidate government enactments even if no constitutional right is at stake. *See Village of Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 102 (1982). When a rule includes vague terms, such as rules which prohibit library patrons from acts

which "annoy" others, this language can be deemed "perfectly vague" without further clarification, such as listing specific behaviors which constitute annoyance. (*Id*.) As the Supreme Court wrote in *Brown v. Louisiana*:

> [a] State or its instrumentality may, of course, regulate the use of its libraries or other public facilities. But it must do so in a reasonable and nondiscriminatory manner, equally applicable to all and administered with equality to all. It may not do so as to some and not as to all.... And it may not invoke regulations as to use—whether they are ad hoc or general—as a pretext for pursuing those engaged in lawful, constitutionally protected exercise of their fundamental rights....

*Brown v. State of La.*, 383 U.S. at 131 [citations omitted].

A vagueness challenge will succeed when a party does not have actual notice of what activity the statute prohibits. The vagueness doctrine, unlike the overbreadth doctrine, additionally seeks to ensure fair and non-discriminatory application of the laws, thus reflecting its roots in the due process clause. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Accordingly, the vagueness doctrine finds repulsive laws that endow officials with undue discretion to determine whether a given activity contravenes the law's mandates. *See Fallon, Making Sense of Overbreadth*, 100 Yale L.J. 853 (1991); s*ee generally P. Bator, D. Meltzer, P. Mishkin, & D. Shapiro, Hart & Wechsler's The Federal Courts And the Federal System*, 184–88 (3d Ed.1988).

Defendants primary source of legal authority *State v. Smith*, 46 N.J. 510 (1966) is misplaced as it addresses conduct which is physical in nature and explicitly does not address impermissibly vague statutes as applied to pure speech. "We

emphatically reject the motion urged by appellant that the First and Fourteenth Amendments afford the same kind of freedom to those who would communicate ideas by conduct such as patrolling, marching, and picketing on streets and highways, as these amendments afford to those who communicate ideas by pure speech." *State v. Smith*, 46 N.J. 510 (1966).

At issue in *State v. Smith* was N.J.S.A. 2A:170-29, a criminal statute which has long since been repealed which read: "Any person who by noisy or disorderly conduct disturbs or interferes with the quiet or good order of any place of assembly, public or private, including schools, churches, libraries and reading rooms, is a disorderly person." In discussing the criminal statute, the Smith court stated:

> "[The statute] speaks of 'noisy or disorderly conduct' which 'disturbs or interferes with the quiet or good order' of 'any place of assembly, public or private.' Surely, a man of ordinary intelligence knows the council chamber at the time of a public hearing is a public 'place of assembly.' So, too, such a man knows the 'quiet or good order' of a place depends upon the nature and the purpose and the needs of the meeting. He also knows a legislative chamber from a barroom or a ball park and knows what kind of behavior comports with each. Hence the statute is valid on its face. It is also valid as applied in this case. For a man to refuse to leave upon the order of the president of the Council, to resist removal by locking arms with another and requiring two officers to carry and drag him from the chamber, is clearly foreign to the nature and purpose of the assembly, and the actor should not be surprised by a decision that his conduct was 'disorderly' and did disturb and interfere with both the 'quiet' and 'the good order' of that meeting."

*State v. Smith*, 46 N.J. 510, 519 (1966) (emphasis added).

The *Smith* court makes it clear that a particular defendant in that case should not be surprised as to the enforceability due to the physical nature of his obstruction, which is inapplicable here as there was no physical violence by Plaintiff.

The statute that replaced N.J.S.A. 2A:170-29 now states that "[a] person commits a disorderly persons offense if, with purpose to prevent or disrupt a lawful meeting, procession or gathering, he does an act tending to obstruct or interfere with it physically." (*N.J.S.A*. 2C:33–8). The *Smith* court stated that "[t]he testimony well warranted a finding that Callender's resistance to the efforts to remove him from the chamber was disorderly, and that that conduct, with the noise necessarily generated by the mode of removal to which Callender put the police officers, did disturb the quiet and good order within the chamber." (*Id* at 514). It was not the defendant's speech in *State v. Smith* which was proscribed by the rule of decorum, but his physical bodily conduct and behavior. *Id*.

Here, the municipal rule in question is incontrovertibly designed to curtail speech, as it states "[a]ny person who has been declared out of order by the Presiding President officer and has been asked to cease speaking and sit down, shall comply immediately or he/she shall forthwith be removed from the meeting…" (*See* Complaint ¶ 32). The language "cease speaking" incontrovertibly denotes that this rule is aimed at curtailing speech and not conduct. (*Id*.) Accordingly, the analysis is not the same since it seeks to limit solely speech. Here, Plaintiff does not allege that

the statute is unconstitutionally vague in so far as it prescribes conduct that is physical in nature, but rather the curtailment of pure speech, as is made clear by the facts in the Complaint. (*Id* at ¶24-5,29, 37).

Notably, the statute in *State v. Smith* did not carry any issues regarding a lack of specificity as to the procedures which would be used to adjudicate its enforcement since it was a criminal statute. (*State v. Smith*, 46 N.J. 510, 519 (1966)). The defendants in *State v. Smith* were fully apprised of the procedure that would be used to administer justice regarding alleged violations. Here, Plaintiff was not only removed from the city council meeting without being given a warning that her conduct was deemed to be in violation of Municipal Council rules, but she was further banned from future meetings in a wholly arbitrary manner. (*Complaint* ¶30, 31, 32,39). The rule does not permit subsequent bans based on inappropriate language or disruptive conduct, nor are such bans constitutional. *Walsh v. Enge*, 154 F. Supp. 3d 1113 (D. Or. 2015). Further, Defendants use the threat of police force in order to remove Plaintiff, creating an environment in which failure to comply the municipal rule can lead to criminal consequences. If Plaintiff were to fail to comply with the municipal rule in question, she would be subject to criminal charges such as trespass, in a situation where other members of the public would not be subject to such a charge.

### B. Plaintiff is Not Estopped from Litigating the Issue of Whether the City's Rules are Facially Unconstitutional

Collateral estoppel is applicable where "(1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question." *Del. River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 573 n.10 (3d Cir. 2002).

Under res judicata, "*a final judgment on the merits* bars further claims by parties or their privies based on the *same cause of action.*" *Montana v. United States,* 440 U.S. 147, 153 (1979)(emphasis added)).

Defendants failed demonstrate the fundamental requirements for collateral estoppel, as identical issues were not decided in previous cases. Both previous cases were disposed of via a Motion to Dismiss for Failure to State a claim on Complaints filed by a pro se litigant where there was no final judgment on the merits.  Plaintiff's Complaints in El Bomani v. Baraka, CV 20-655 (KM) (ESK), 2021 WL 2349761 (D.N.J. June 9, 2021) were dismissed due to insufficient facts being presented in both of Plaintiff's complaints under that matter number. That case involved entirely different claims and there was no final judgment on the merits. The case was explicitly dismissed on procedural grounds Defendants' specious arguments to the

contrary do not merit any consideration from this court and demonstrate a fundamental lack of understanding for the principal they are attempting to invoke.

### Argument III
### COUNTS FOUR FIVE SIX AND EIGHT ARE PROPERLY PLED.

Here, the Fourth, Fifth, and Sixth Counts of Plaintiff's Complaint all set forth, at a minimum, sufficient facts that under a reasonable reading of the complaint Plaintiff may be entitled to relief. *Pinker v. Roche Holdings Ltd*., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

Plaintiff's Fourth Cause of Action presents a viable cause of action based on its allegations that Plaintiff suffered a violation of her due process rights due to her removal from the February 7, 2024, meeting and subsequent ban as well as her removal from the September 27, 2024 meeting and subsequent ban. "A State or its instrumentality may, of course, regulate the use of its libraries or other public facilities. But it must do so in a reasonable and nondiscriminatory manner, equally applicable to all and administered with equality to all. It may not do so as to some and not as to all.... And it may not invoke regulations as to use—whether they are ad hoc or general—as a pretext for pursuing those engaged in lawful, constitutionally protected exercise of their fundamental rights...." *Brown v. Louisiana*, 383 U.S. 131, 143 (1966).

Plaintiff's Fourth Cause of Action states "[t]he President unilaterally decided to remove Plaintiff from the February 7, 2024, meeting and ban her from the subsequent two (2) meetings. Plaintiff was not afforded the opportunity to respond or plead her case. Plaintiff suffered and continues to suffer deprivation of her due process rights….The President and those similarly situated are giving blanket authority to remove and ban at their will without any accountability….The removal and subsequent banning of Plaintiff from City Hall meetings signals to other community members that should they speak out and advocate for themselves and the community, the will suffer due process deprivations." Complaint ¶100-5. Under the above precedent, which has provided at length, Plaintiff has plead sufficient facts for a viable cause of action under both §1983 and the NJCRA for a deprivation of her due process rights.

Plaintiff's Fifth Cause of Action also presents a viable cause of action based on its allegations that Plaintiff suffered a violation of her rights under the New Jersey Constitution stemming from her removal from the February 7, 2024, and September 24, 2024 meetings and subsequent bans. Article 1, paragraph 1 of the New Jersey Constitution states that "[a]ll persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness." The Complaint makes it clear that

"The right to defend life and liberty is directly contradicted by the events leading up to the removal and subsequent banning of Plaintiff from two (2) meetings" and that the lack of a legitimate process for removal and banning, lack of warning prior to removal or banning, no hearing or meaningful remedy post-deprivation and unilateral decision making all violated Plaintiff's due process rights. (*See Complaint* ¶110-121). Again, under the above precedent, which has provided at length, Plaintiff has plead sufficient facts for a viable cause of action under both §1983 and the NJCRA for a deprivation of her due process rights.

Plaintiff's Sixth Cause of Action presents a viable cause of action based on its allegations that Plaintiff suffered a violation of her rights under the New Jersey Civil Rights Act stemming from her removal under threat of police violence from the February 7, 2024 meeting and subsequent ban. The New Jersey Civil Rights Act 10:6-2(c) states:

> "Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief. The penalty provided in subsection e. of this section shall be applicable to a violation of this subsection."

The Complaint makes it clear that "Defendants have deprived Plaintiff of her substantive due process rights as well as her right to free speech by removing and subsequently banning her from two (2) City Hall meetings" specifically under the threat of police violence in an attempt to quiet Plaintiff's speech. Complaint ¶80, 81, 82, 83. Again, under the above precedent, which has provided at length, Plaintiff has plead sufficient facts for a viable cause of action under the NJCRA. As set forth in *Ramos v. Flowers*, "[w]e have recognized two types of claims under the Act: first, a claim for when one is 'deprived of a right,' and second, a claim for when one's 'rights are interfered with by threats, intimidation, coercion or force.'" *Ramos v. Flowers*, 429 N.J. Super. 13, 21 (App. Div. 2012). Here, Plaintiff has set forth both her substantive due process rights as well as her right to free speech and plead sufficient facts for a viable cause of action under the NJCRA.

Defendants speciously rely on *Rivkin v. Dover Twp. Rent Leveling Bd.*, 143 N.J. 352, 373 (1996*). for the proposition that an action in lieu of prerogative writs, such as those available under N.J.S.A. 10:4-15 and N.J.S.A. 10:4-16 constitutes an adequate a post-deprivation remedy for those whose liberty interests are at stake. See Defendants' Brief in Support of Motion to Dismiss at Page 19-20. This is yet another patent misrepresentation of law. "Post-deprivation remedies are most likely to be deemed satisfactory substitutes for pre-deprivation process when a meaningful pre-deprivation hearing is impracticable, and property rather than a life or liberty interest

is at stake." *Rivkin v. Dover Twp. Rent Leveling Bd.*, 143 N.J. 352, 373 (1996) (internal citations omitted). Furthermore, the Rivkin court unambiguously stated that "it is preferable for states to provide a pre-deprivation hearing whenever practicable." (*Id* at 372). The *Rivkin* court was explicitly dealing with property interests and is therefore wholly inapplicable. Assuming, *arguendo*, that the court agreed that a post-deprivation remedy is a satisfactory substitute for a pre-deprivation process, which it is not, Defendants provide no reason as to why there is no such process established which would provide for a hearing on bans between a removal and the next hearing. Defendants' additional claims regarding previous penalties for removal lay wholly outside the record and have no relevance to viability of Plaintiff's fourth, fifth and sixth causes of action.

### Argument IV
### PLAINTIFF'S CLAIMS ARE PROPERLY PLED UNDER MONELL.

A municipality is a "person" for purposes of § 1983. (*Monell, supra*, 436 U.S. at 662, 690). If the "government's authorized decisionmakers" properly embark on a particular course of action, that action may be considered "an act of official government 'policy.'" (*Pembaur, supra*, 475 U.S. at 481). Under 42 U.S.C. § 1983 as well as the NJCRA, a municipality may be accountable for the action of an official who "possesses final authority to establish municipal policy with respect to the action ordered." *Stomel v. City of Camden*, 192 N.J. 137 (2007) (*quoting Pembaur, supra*, 475 U.S. at 481 (plurality opinion)). Defendants' arguments regarding *Monell*

liability under the NJCRA are contradicted by the very case they rely on for their arguments. In *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. at 691 (1978), the court discusses when a municipality can be held liable for the actions of its members.

### Argument V
### PLAINTIFF'S CLAIMS UNDER COUNT SEVEN ARE PROPERLY PLED.

As has previously been established, NJCRA claims are generally interpreted analogously as those brought under §1983. *See Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011). Plaintiff's Seventh Cause of Action mirrors that which is set forth in the Eigth Cause of Action. See ECF 1. Essentially, Plaintiff has brought retaliation claims under both §1983 and Monell.

As set forth above, a citizens may charge that the government hurt them in retaliation for criticism against authorities. *See Bd. of County Comm'rs v. Umbehr*, 518 U.S. 668, 671–72, (1996). In general, constitutional retaliation claims are analyzed under a three-part test. Plaintiff must prove (1) that he engaged in constitutionally protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir.2001). Retaliation claims from *citizens*, not public employees, the has no requirements that a plaintiff show that their speech is on a matter of public concern. *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274 (3d Cir. 2004). First, Plaintiff has sufficiently set forth that she engaged in a constitutionally

protected activity, namely speaking out against corruption at a municipal city council meeting. Second, Plaintiff has detailed that the government responded by violating her free speech rights through removal and subsequent bans along with subjecting her to threats of police violence. Finally, Plaintiff has alleged that this was done because she was attempting to speak out against corruption and voice her dissatisfaction with the municipal council.

Defendants argue that the complaint contains no well plead allegations that the city engaged in unconstitutional customs or upheld unconstitutional policies. This is a patently ridiculous argument considering Plaintiff has filed a 22-page complaint detailing the exact dates, times, individuals, policies (including specific words within those policies), punishments and motivations for Defendants. Defendants' case law in support of their argument is best exemplified by their citation to *McTernan*, where a complaint was dismissed because it "gives no notice as to the Defendants' improper conduct, simply alleges that McTernan's rights were violated 'due to the City's policy of ignoring First Amendment right[ts]." *McTernan v. City of York*, PA, 564 F.3d 636 (3d Cir. 2009). There can be no comparison to McTernan's sparse complaint made up of legal conclusions and Plaintiff's deeply detailed and fact-based complaint.

Further, Defendants seemingly claim to have no notice of what policies or conduct could be alleged to have deprived Plaintiff of her rights. Yet they have been

well aware of their unconstitutional conduct since 2019, when the ACLU sent a letter to Defendants detailing their improper conduct at municipal council meetings at in nearly identical violations of the citizens constitutional rights at Newark Municipal Council Meetings. There is no requirement, nor does Defendant present any case law to establish a requirement, that a Plaintiff must present other *Monell* judgments against an entity in order to bring a case against a municipal entity. Such a requirement would preclude any case from being brought in the first place and create an immunity from suit that simply does not exist.

## Argument VI
## PLAINTIFF MUS BE AFFORDED THE OPPORTUNITY TO AMEND HER COMPLAINT EVEN IF THE COURT FINDS THAT CERTAIN COUNTS ARE SUBJECT TO DISMISSAL

Moreover, in the event a complaint fails to state a claim, unless amendment would be futile, the District Court must give a plaintiff the opportunity to amend her complaint. *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir.2000). Plaintiff need not seek leave to amend as part of her opposition. (*Phillips v. Cnty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008)). The Third Circuit courts have instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir.2002) (citing *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir.2000).

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion for dismissal. In the alternative, Plaintiff asks that the Court recognize her right to amend any dismissed portion of the Complaint.

Dated: November 14, 2025

Respectfully submitted,
ANDERSON LAW PLLC
Attorney for Plaintiff


_____/s/ Gregory Byrnes_____
By: Gregory A. Byrnes